**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

**CHARLES DENNARD**
**COREY LEA, pro se**

**Plaintiffs,**

**v.**

**THE SECRETARY OF AGRICULTURE,**
**BROOKE ROLLINS,**
**THE UNITED STATES DEPARTMENT OF**
**DEPT. OF AGRICULTURE**
**THE WINDSOR GROUP, LLC**
**THE MIDTOWN GROUP**
**ANALYTIC AQUISTION**

Case: 1:25-cv-00879
Assigned To : Reyes, Ana C.
Assign. Date : 3/21/2025
Description: TRO/PI (D-DECK)

**No. ___________**

**MOTION FOR TEMPORARY RESTAINING ORDER AND PRELIMINARY INJUNCTION**

Pursuant to Federal Rule of Civil Procedure 65 and Local Civil Rule 65.1, Plaintiff Corey Lea respectfully files this motion for entry of a temporary restraining order and/or preliminary injunction as to Federal Defendants.

Plaintiff Lea respectfully requests that the Court schedule an expedited hearing on this motion. As explained in the accompanying memorandum, expedition is essential because the taxes on the relief afforded to Plaintiff Lea from section 22007 of the Inflation Reduction Act challenged by the Plaintiff is scheduled to be implemented and enforced beginning on April 15, 2025. Accordingly undersigned counsel will contact the Emergency Judge on duty via email at emergency_judge@dcd.uscourts.gov immediately upon filing of this motion to ask for a date and time for a hearing. Once that is set, Plaintiff Lea will inform the Department of Justice, which we expect will represent the Federal Defendants in this action, via email of that fact. Thereafter, Plaintiff Lea will file a certificate regarding same pursuant to Local Civil Rule 65.1.

RECEIVED
Mail Room
MAR 21 2025
Angela D. Caesar, Clerk of Court
U.S. District Court, District of Columbia

Respectfully Submitted

Corey Lea
P.O. Box 422
Arrington, Tennessee
615 308 7787
cowtownfoundation@gmail.com

VERFICATION

I, Corey Lea, under the penalty of perjury, attest that all the aforementioned statements, to the best of my knowledge, are true. For the reasons stated, the Court should Grant the relief requested.

SUSAN TAYLOR
TENNESSEE
NOTARY
PUBLIC
My Comm Exp.
June 20, 2027
COUNTY OF RUTHERFORD

Notary Public

Signature Seal

3-20-25
Date

CERTIFICATE OF SERVICE

I hereby certify that on March 20, 2025, a true and exact copy of the forgoing pleading was filled in person with the Clerk's office and served upon the parties as indicated below through certified the United States Mail:

Henry Leventis
Office of the United States Attorney
110 9th Avenue South, #A961
Nashville, TN 37203

Counsel for Defendant Thomas Vilsack,
Secretary of the United States Department of Agriculture

I hereby certify that on March 20, 2025, a true and exact copy of the foregoing pleading was filed in person with the Clerk's office and served via email Henry.Leventis@usdoj.gov.to U.S. Mail on Registered Agent for Defendants as listed below:

The Department of Agriculture
1400 Independence Avenue SW
Washington, DC 20250

U.S. Department of Justice
950 Pennsylvania Avenue, NW
Washington, DC 20530-0001

Windsor Group, LLC,
6710A Rockledge Dr Ste. 400
Bethesda, Maryland 20817

The Midtown Group,
1130 Connecticut Ave NW
#450 Washington, DC 20036.

Analytic Acquisitions,
8300 Hartford Ave.
Silver Spring, Maryland 20910-5308.

AFFIDAVIT OF COREY LEA

I, Corey Lea, under the penalty of perjury, attest to the following:
I received relief under section 22006 and 22007 of the Inlfation Reduction Act. My relief under the direct loan was written off and I received a 1099C tax form. I also received relief under section 22007 of the Inflation Reduction Act and my tax form was 1099G. If the Secretary of Agriculture does not change the tax form for the overwhelming majority of Black farmers who received relief under section 22007, I will have to pay taxes on my suffering at the hands of the Federal Defendants this will total over $100,000.

Corey Lea
P.O. Box 422
Arrington, Tennessee
615 308 7787
cowtownfoundation@gmail.com

VERFICATION

I, Corey Lea, under the penalty of perjury, attest that all the aforementioned statements, to the best of my knowledge, are true. For the reasons stated, the Court should Grant the relief requested.

SUSAN TAYLOR
TENNESSEE NOTARY PUBLIC
My Comm Exp. June 20, 2027
COUNTY OF RUTHERFORD

Notary Public

Susan Taylor

Signature Seal

3-20-25

Date

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

**CHARLES DENNARD**
**COREY LEA, pro se**

**Plaintiffs,**

v. ) **No. __________**

**THE SECRETARY OF AGRICULTURE,**
**BROOKE ROLLINS,**
**THE UNITED STATES DEPARTMENT OF**
**DEPT. OF AGRICULTURE**
**THE WINDSOR GROUP, LLC**
**THE MIDTOWN GROUP**
**ANALYTIC AQUISTION**

**MEMORANDUM IN SUPPORT TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION AGAINST SECRETARY OF AGRICULTURE BROOKE ROLLINS**

Comes now Plaintiff Corey Lea, to move this Honorable Court for relief in the above styled caption.

## INTRODUCTION

On August 18, 2022, President Biden signed into law the Inflation Reduction Act. Plaintiff Lea and thousands of other Black Farmers received relief under section 22007 of the Inflation Reduction Act. However, Defendant Rollins instructed the employees of the Department of Agriculture to seen out 1099G Tax forms in which the recipients of the relief under 22007 would have to pay taxes.

In contrast, section 22006 of the Inflation Reduction Act was also pandemic relief that went to an overwhelmingly number of White farmers. The Federal Defendant initially sent out 1099G forms to recipients. After some resistance from White farmers the Federal Defendants

updated the tax forms to 1099C, which is not reportable income to the IRS. The Plaintiff asking this Court to reserve the status quo prior to the issuance of the 1099G forms to the Black farmers under section 22007 of the Inflation Reduction Act. Equal Protection Principles under the Fifth Amendment are in force.

## STATEMENT OF FACTS

**A.** Section 22006 of the Inflation Reduction Act - Section 22006 of the Inflation Reduction Act (IRA) provided $3.1 billion for USDA to assist distressed borrowers with certain FSA direct and guaranteed loans and to expedite assistance for those whose agricultural operations are at financial risk. Authorized uses of these funds include payments to qualifying distressed borrowers, the cost of loans or loan modifications for distressed borrowers, or to carry out section 331(b)(4) of the Consolidated Farm and Rural Development Act (7 U.S.C. 1981(b)(4)) with respect to distressed borrowers.

Since the IRA was signed into law in August 2022, FSA has acted swiftly to assist distressed borrowers in retaining their land and continuing their agricultural operations. The first round of automatic assistance, totaling over $800M in assistance to distressed direct and guaranteed borrowers, was announced on October 18, 2022, just two months after the passage of the law, at which point the vast majority of the announced funds had already been credited to borrower accounts.

As of January 15, 2025, FSA has provided more than $2.74B in IRA 22006 assistance to more than 58,000 farm loan borrowers. Under the announcement of the final round of assistance made in December 2024, FSA estimated $300M in additional assistance to be distributed to recipients. Additional funds have been used for the subsidy modification costs of borrower payments and loan modifications.

At this time, only direct loan borrowers who received Section 22006 assistance are receiving revised tax forms. If you also have received Section 22006 assistance as a Guaranteed Loan borrower, it is not part of this reclassification and will still be reflected on your Form 1099-G.

**B.** Section 22007 of the Inflation Reduction Act- The Discrimination Financial Assistance Program was established by Section 22007 of the Inflation Reduction Act. Through the Act, Congress allocated $2.2 billion for the program and directed USDA to provide financial assistance to farmers, ranchers and forest landowners who experienced discrimination in USDA farm lending programs prior to January 2021.

The Award Issues for Discrimination Financial Assistance Program under Section 22007 of the Inflation Reduction Act (IRA):

In total, about 43,000 awards were approved.

a. More than 23,000 awards, about 54%, were to applicants who had or have farming or ranching operations. They received a total of about $1.9 billion with individual awards ranging from $10,000 to $500,000.

b. Over 20,000 awards, about 46%, were to applicants who planned to have farming or ranching operations but were unable to establish them as a result of USDA actions. They received a total of $101 million with individual awards ranging from $3,500 to $6,000.

Awards were approved for applicants from every state, the District of Columbia, U.S. Virgin Islands, Puerto Rico, and American Samoa.

A majority of the farmers who received this financial assistance for discrimination are located in Alabama, Mississippi, Georgia and other southern states. More information on awards distribution can be found at 22007apply.gov, including a state-by-state breakdown.

## ARGUMENT

As discussed below, an analysis of the four-factor test governing the issuance of preliminary injunctions demonstrates that the Court should grant preliminary injunctive relief during the pendency of these proceedings.

**I. THE PRELIMINARY INJUNCTION STANDARD AND PURPOSE.**

Generally, courts consider four factors when deciding whether to issue a preliminary injunction. The four factors are:

(1) whether the movant has a strong likelihood of success on the merits;

(2) whether the movant would suffer irreparable harm without the injunction;

(3) whether issuance of the injunction would cause substantial harm to others;

(4) whether the public interest would be served by the issuance of the injunction.

Bonnell v. Lorenzo, 241 F.3d 800, 809 (6th Cir. 2001); see also Barber v. Dearborn Pub. Sch., 286 F. Supp. 2d 847, 851 (E.D. Mich. 2003). Courts balance these four factors in their analysis, as no single factor is dispositive. Barber, 286 F. Supp. 2d at 851 (citing Neveux v. Webcraft Tech., Inc., 921 F. Supp. 1568, 1570-71 (E.D. Mich. 1996) (citing Performance Unlimited v. Questar Publishers, Inc., 52 F.3d 1373, 1381 (6th Cir. 1995)).

**A. THE PLAINTIFF CLASSES HAVE A SUBSTANTIAL LIKELIHOOD OF SUCCESS ON THE MERITS.**

The Plaintiff, and similar situated farmers and ranchers have a very strong likelihood of succeeding on their Fifth Amendment claim, see *Bolling v. Sharpe*, 347 U.S. 497, 500 (1954) ("In view of our decision that the Constitution prohibits the states from maintaining racially segregated public schools, it would be unthinkable that the same Constitution would impose a lesser duty on the Federal Government. We hold that racial segregation in the public schools of the District of Columbia is a denial of the due process of law guaranteed by the Fifth Amendment to the Constitution.")

The Fifth Amendment provides that "[n]o person shall be . . . deprived of life, liberty, or property, without due process of law . . . ." In numerous decisions, this Court "has held that the Due Process Clause of the Fifth Amendment forbids the Federal Government to deny equal protection of the laws. E. g., Hampton v. Mow Sun Wong, 426 U.S. 88, 100 (1976); Buckley v. Valeo, 424 U.S. 1, 93 (1976); Weinberger v. Wiesenfeld, 420 U.S. 636, 638 n. 2 (1975); Bolling v. Sharpe, 347 U.S. 497, 500 (1954)." Vance v. Bradley, 440 U.S. 93, 95 n. 1 (1979).

Like the Plaintiffs in *Boiling v. Sharpe* the Plaintiff rests his claim directly on the Due Process Clause of the Fifth Amendment. The Plaintiff claims his rights have been violated under the Fifth Amendment and have no effective means other than the judiciary to vindicate his rights.

The Federal Defendant remain a passive participant in discrimination. For example, under section 22006, the program directly affected 30,000 White farmers and just 2,225 Black farms. The Federal Defendants gave those farmers the right to appeal the awards directly with the local FSA office. Moreover, the Federal Defendants used extraordinary measures clause program from section 22002 of the Inflation Reduction Act to pay taxes for some farmers.

In contrast, section 22007 of the Inflation Reduction Act offered no appeals rights for the overwhelmingly Black recipients or Socially Disadvantaged Farmers. In comparison, section 22006 of the Inflation Reduction Act helps Distressed Farms and is not limited to protected classes. Section 22007 is exclusively for Socially Disadvantaged Farmers who have suffered discrimination at the hand of the Department of Agriculture.

As aforementioned, more than 23,000 of the recipients of section 22007 had loans with the Department of Agriculture. The question ultimately presents itself with the loans of Socially Disadvantaged Farmers on how many direct loans are there? Undoubtedly, the USDA has enjoyed great success discriminating against Socially Disadvantaged Farmers, specifically Black

farmers, by using a two-tier administrative justice system. The Federal Defendants openly admits it, see *Wynn v. Vilsack*, 545 F. Supp. 3d 1271, 1279 (M.D. Fla. 2021) ("The historical evidence includes things such as a dramatic decrease in minority owned farms from 1920 to 1992; USDA's discriminatory treatment of SDFRs when they applied for loans through USDA, resulting in lower approval rates among minority farmers; when loans were offered, they were frequently for reduced amounts compared to the amount sought by SDFR applicants and on less favorable terms; inequities in how the loans of minority farmers were serviced by USDA; lack of SDFR representation on local USDA committees that were responsible for overseeing USDA loan programs; and concerted efforts by USDA to ignore complaints of discrimination made by minority farmers.")

Most notably, the Federal Defendants have a discriminative motive for denying not using the extraordinary measures to either provide 1099C IRS tax forms to those recipients of 22007 awards who had loans with the USDA. As a form of retaliation, the Federal Defendants are betting on the fact that all of the recipients will have not get to enjoy the full benefit of the award like the Distressed White farmers in section 22006 of the Inflation Reduction Act or later that the IRS will put a lien on real property belonging to those Black recipients and ultimately force sell real property to square up with the Government.

**B. PLAINTIFFS WILL CONTINUE TO SUFFER IRREPARABLE HARM WITHOUT INJUNCTIVE RELIEF.**

The Federal Defendants went all out on this blatant act of discrimination. In the instant case, the Plaintiff's loans with the Federal Defendant were not in his personal name, yet the award received was made payable to the personal name of the Plaintiff. Furthermore, the Plaintiff had a direct loan that was affected by section 22006 of the Inflation Reduction Act and receive a 1099C IRS tax form and nearly two years later, the Plaintiff was sent an award under section

22007 of the Inflation Reduction Act in which he is then expected to pay taxes on his pain and suffering at the hands of the Federal Government.

**Equal Protection Principles**

The Equal Protection Clause of the Fourteenth Amendment provides, "No State shall . . . deny to any person within its jurisdiction the equal protection of the laws." Generally, the same equal protection obligations apply to the federal government through the Fifth Amendment. When federal legislation or agency action targets benefits to groups based, in whole or in part, on race or sex, it may trigger equal protection scrutiny. While the federal government can consider race or sex in narrow circumstances, the Constitution's equal protection guarantees require that the government have sufficient justification for doing so.

To determine the sufficiency of such a justification, federal courts apply strict scrutiny to racial classifications and intermediate scrutiny to sex-based classifications. Strict scrutiny requires the government to demonstrate a compelling interest in considering race and show that its action is narrowly tailored to further that interest. Intermediate scrutiny requires the government to show that its consideration of sex serves an important government interest and that its action is substantially related to achieving that interest.

The Government cannot offer a compelling reason to tax Socially Disadvantaged Farmers while giving relief to White Distressed farmers to the extent of the awards and payments are not taxable, see https://www.farmers.gov/sites/default/files/documents/farmersgov-22006-tax-letters-to-producers.pdf . As of January 25, 2025, there was approximately 400 million left in section 22006 of the Inflation Reduction Act and 200 million in section 22007, the court should enjoin the Federal Defendants from exhausting the remaining funds until Black farmers have an opportunity to receive equal treatment as similar situated White farmers.

## C. A PRELIMINARY INJUNCTION WILL NOT CAUSE SUBSTANTIAL HARM TO OTHERS

The third prong of the test – whether a preliminary injunction would cause substantial harm to others – clearly weighs in favor of issuing an injunction. Defendants have not and cannot identify any way in which their interests (or the interests of anyone else) would be harmed if they are prevented from exhausting the remaining funds. The Federal Defendants used the funds to serve White farmers who have received 210 billion from the Federal Defendants since 2016 with Black farmers receiving less than one tenth of one percent. Moreover, the Federal Defendants should not be allowed to profit from the pain and suffering of Black farmers and ranchers.

The 1099G form sent to Socially Disadvantaged Farmers is retaliation by the Federal Defendants against mainly Black farmers and ranchers. This point further illustrated by the "no appeals" clause that the Federal Defendants mandated on the "Hub" Defendants. In addition, section 22006 was administered within 30 days of the passage of the act because it directly benefitted overwhelmingly White farmers in distress. In contrast, it took nearly 2 years for the Federal Defendants to administer section 22007 of the Inflation Reduction Act. The Federal Defendants further inflicted harm on Black farmers by failing to provide those Black farmers who have been victims of discrimination at the hands of the Federal Defendants one more opportunity to keep those farmers from farming. It's to be noted that section 22007 only applied to discrimination prior to January of 2021.

## D. A PRELIMINARY INJUNCTION WILL SERVE THE PUBLIC INTEREST

The final prong of the test – the public interest – also strongly supports granting preliminary injunctive relief. The protection of constitutionally protected rights always serves the public interest. Indeed, "protection of constitutional rights … is always in the public interest."

Gannett Co., Inc. v. DePasquale, 443 U.S. 368, 383 (1979) (emphasis added), and G & V Lounge, Inc. v. Michigan Liquor Control Comm'n, 23 F.3d 1071, 1079 (6th Cir. 1994)); see also Barber, 286 F. Supp. 2d at 859-60 and Chambers, 145 F. Supp. 2d at 1073. Protection of our Socially Disadvantaged Farmers would seem to fall into the same category—always in the public interest.

**CONCLUSION**

For the foregoing reasons, Plaintiff respectfully asks this Court to enter a preliminarily injunction, enjoin the Federal Defendants from submitting the 1099G forms to recipients of section 22007. The Federal Defendant can cure the problem by updating the forms to 1099C before April 15, 2025.

Corey Lea
P.O. Box 422
Arrington, Tennessee
615 308 7787
cowtownfoundation@gmail.com

VERFICATION

I, Corey Lea, under the penalty of perjury, attest that all the aforementioned statements, to the best of my knowledge, are true. For the reasons stated, the Court should Grant the relief requested.

SUSAN TAYLOR
TENNESSEE NOTARY PUBLIC
My Comm Exp. June 20, 2027
COUNTY OF RUTHERFORD

Notary Public

Susan Taylor

Signature Seal

3-20-25

Date

CERTIFICATE OF SERVICE

I hereby certify that on March 18, 2025, a true and exact copy of the forgoing pleading was filled in person with the Clerk's office and served upon the parties as indicated below through certified the United States Mail:

Henry Leventis
Office of the United States Attorney
110 9th Avenue South, #A961
Nashville, TN 37203

Counsel for Defendant Thomas Vilsack,
Secretary of the United States Department of Agriculture

I hereby certify that on April 11, 2023, a true and exact copy of the foregoing pleading was filed in person with the Clerk's office and served via email Henry.Leventis@usdoj.gov.to U.S. Mail on Registered Agent for Defendants as listed below:

The Department of Agriculture
1400 Independence Avenue SW
Washington, DC 20250

U.S. Department of Justice

950 Pennsylvania Avenue, NW
Washington, DC 20530-0001

Windsor Group, LLC,
6710A Rockledge Dr Ste. 400
Bethesda, Maryland 20817

The Midtown Group,
1130 Connecticut Ave NW
#450 Washington, DC 20036.

Analytic Acquisitions,
8300 Hartford Ave.
Silver Spring, Maryland 20910-5308.