**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| CHARLES DENNARD, et al.,<br><br>   *Plaintiff*,<br><br> v.<br><br>BROOKE ROLLINS, Secretary of Agriculture et al.,<br><br>   *Defendant*. | Case No. 1:25-cv-879 (ACR) |

**<u>MEMORANDUM OPINION AND ORDER</u>**

Before the Court are three motions.  *Pro se* Plaintiffs Charles Dennard and Corey Lea move to stay this case and remand it to a United States Department of Agriculture (USDA) Administrative Law Judge, Dkt. 14, and seek leave to issue third-party subpoenas, Dkt. 22. Defendants—USDA and its Secretary Brooke Rollins—move to dismiss Plaintiffs' complaint. Dkt. 23.

For the reasons stated below, the Court **DENIES** the Motion to Stay and Remand, **GRANTS** the Motion to Issue Third-Party Subpoenas, and **GRANTS IN PART and DENIES IN PART** the Motion to Dismiss.  The Court concludes that Plaintiffs have not plausibly plead most of their claims.  It will dismiss those claims without prejudice to provide Plaintiffs an opportunity to cure the deficiencies.

### I.  BACKGROUND

*Pro se* Plaintiffs Charles Dennard and Corey Lea are black farmers who owned farms financed through USDA's loan programs.  Dkt. 1 (Compl.) ¶ 4.  They filed this action against

USDA and Secretary Rollins (collectively, USDA), alleging that USDA discriminated against them in administering its loan and relief programs and in handling their civil rights complaints.

Plaintiffs assert claims under 42 U.S.C. 1981, the Equal Credit Opportunity Act, the Administrative Procedure Act, the Due Process Clause, and the Equal Protection Clause.  They allege, *inter alia*, that USDA prohibits black farmers from obtaining "new farm ownership loan[s]," *id.* ¶ 3, and "unlawfully foreclosed" their farms, *id.* ¶ 4.  They also allege that USDA automatically sends black farmers' complaints to USDA's Office of Civil Rights, where the "complaints go unresolved," *id.*, while "[w]hite farmers may take their grievances to the administrative law judge," *id.* ¶ 6.  Plaintiffs further allege that USDA denied them financial assistance and debt relief comparable to what white farmers received, *id.* ¶ 23, and that USDA conspired with three private banks—Windsor Group, Midtown Group, and Analytic Acquisition—to discriminate against them, *id.* ¶100.[1]

Earlier, Plaintiffs filed a motion for a temporary restraining order and preliminary injunction.  Dkt. 2.  After briefing and a hearing on the motion, the Court denied Plaintiffs' request.  *See* June 3, 2025, Minute Order.  Plaintiffs now ask the Court to stay this case and remand it to a USDA Administrative Law Judge.  Dkt. 14.  They also ask the Court for leave to issue third-party subpoenas.  Dkt. 22.  USDA, in turn, moves to dismiss the complaint for lack of subject-matter jurisdiction and for failure to state a claim.  Dkt. 23.

## II.    LEGAL STANDARD

A motion to dismiss under Federal Rule of Civil Procedure Rule 12(b)(1) challenges the court's subject matter jurisdiction while a motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of the complaint.  *See Haase v. Sessions*, 835 F.2d 902, 906 (D.C. Cir. 1987).  In

---

[1] Plaintiffs name the private banks as co-defendants.  *See* Compl. at 1–3.

reviewing both motions, the court accepts the factual allegations in the complaint as true and "construe[s] the complaint liberally" in the light most favorable to the plaintiff. *Am. Nat. Ins. v. F.D.I.C.*, 642 F.3d 1137, 1139 (D.C. Cir. 2011) (cleaned up).

On a Rule 12(b)(1) challenge, the court considers whether the plaintiff has established that the court has subject-matter jurisdiction to hear its claims. *See Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992). On a Rule 12(b)(6) challenge, it considers whether the plaintiff has pleaded "sufficient factual matter" to "'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678, (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, (2007)). Although courts construe *pro se* filings liberally, *see Erickson v. Pardu*s, 551 U.S. 89, 93 (2007), a *pro se* plaintiff must plead enough "factual content [to] allow[ ] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged," *Iqbal*, 556 U.S. at 678; *see Atherton v. D.C. Off. of Mayor*, 567 F.3d 672, 681–82 (D.C. Cir. 2009).

### III.    ANALYSIS

The Court begins by addressing USDA's Motion to Dismiss and then turns to Plaintiffs' Motion to Stay and Remand and Motion to Issue Third-Party Subpoenas.

### A.  Motion to Dismiss

#### 1.  42 U.S.C. § 1981

USDA first argues that sovereign immunity bars Plaintiffs' claim under 42 U.S.C. § 1981. The Court agrees. "Absent a waiver, sovereign immunity shields the Federal Government and its agencies from suit." *F.D.I.C. v. Meyer*, 510 U.S. 471, 475 (1994). Congress has not waived sovereign immunity for § 1981 claims against the federal government. *See Benoit v. Dep't of Agric.*, 608 F.3d 17, 20 (D.C. Cir. 2010).

Plaintiffs offer no meaningful response to USDA's argument.  Instead, they assert that "[t]he Court has already ruled on the jurisdictional issue in this case."  Dkt. 28 at 10.  It has not. Because sovereign immunity applies, the Court dismisses Plaintiffs' § 1981 claim for lack of subject-matter jurisdiction.

Next, USDA argues that Plaintiffs fail to state claims under the Equal Credit Opportunity Act, the Administrative Procedure Act, the Due Process Clause, and the Equal Protection Clause. The Court addresses each argument in turn.

## 2.  Equal Credit Opportunity Act

The Equal Credit Opportunity Act (ECOA) makes it "unlawful for any creditor to discriminate against any applicant, with respect to any aspect of credit transaction" based on the applicant's membership in a protected class.  15 U.S.C. § 1691(a).  The United States is considered a "creditor" under ECOA.  *Garcia v. Johanns*, 444 F.3d 625, 629 n.4 (D.C. Cir. 2006).  And "[t]he regulations governing ECOA define a credit transaction as every aspect of an applicant's dealings with a creditor regarding an application for credit or an existing extension of credit."  *Id.* (cleaned up).

Plaintiffs allege that USDA violated ECOA by (1) denying their loans, (2) "stating that they intended to deny" their future loans, (3) "subjecting them to discriminatory lending terms," and (4) "delaying or obstructing their loan applications and approvals."  Dkt. 28 at 15–16.  They allege both disparate treatment and disparate impact claims.

### a.  *Disparate Treatment—Loan Denial*

According to USDA, Plaintiffs' must establish four elements to make a disparate treatment claim: (1) that they were "'member[s] of a protected class,'" (2) applied for and were qualified for loans with USDA, (3) were rejected for the loans despite their qualifications, and

(4) that USDA "'continued to approve loans for applicants with similar qualifications.'" Dkt. 23 at 12 (quoting *Rahmaan v. Fed. Nat'l. Mortg. Ass'n.*, No. Civ. A. 02-1822, 2003 WL 21940044, at *2 (D.D.C. Mar. 20, 2003)). In Plaintiffs view, the "four-part test" does not apply because they "have pleaded something other than a traditional ECOA loan-denial claim." Dkt. 28 at 16.

To plead a loan-denial claim under ECOA, Plaintiffs must meet the four-factor test Defendants identified. According to USDA, Plaintiffs have only alleged the first element—that they are members of a protected class. The Court agrees. Plaintiffs do not allege that they qualified for the contested loans, that they were rejected for those loans despite their qualifications, or that similarly situated white farmers received more favorable treatment. *See Hildebrandt v. Vilsack*, 102 F. Supp. 3d 318, 326 (D.D.C. 2015). Therefore, the Court dismisses Plaintiffs' loan-denial claim.

### b. *Disparate Treatment—Loan Processing*[2]

Things are less straight-forward with Plaintiffs' loan-processing claims. Plaintiffs allege that USDA took measures to ensure "that any alleged debt could not be contested administratively and delayed any monetary relief to [b]lack farmers . . . so that alleged past due debts could not be paid." Compl. ¶ 31; *see also id.* ¶ 52. The problem is that "[w]hen an ECOA plaintiff claims something other than a discriminatory loan denial, courts have applied something other than the standard four-part test." *See Pride v. Dep't of Agric.,* Civ. A. No. 23-2292, 2024 WL 3924579, at *7 (D.D.C. Aug. 23, 2024) (collecting cases). But the parties have not fully briefed which standard *does* apply. The Court will thus allow Plaintiffs' loan-processing claims to move forward. *See id.*

---

[2] The Court categorizes Plaintiffs' claims concerning prospective loan denials, discriminatory lending terms, and delays or obstructions as Plaintiffs "loan-processing" claims.

### c. *Disparate Impact*

The D.C. Circuit has "expressed no opinion on whether a disparate impact claim can be pursued under ECOA." *Garcia*, 444 F.3d at 633 n.9. But it has explained that, if it can, a plaintiff would need to "identify a specific policy or practice which the defendant has used to discriminate and must also demonstrate with statistical evidence that the practice or policy has an adverse effect on the protected group." *Id.* at 633 (cleaned up).

To the extent Plaintiffs assert a disparate impact claim based on USDA's failure to investigate their discrimination complaints, s*ee* Compl. ¶¶ 19–20; Dkt. 28 at 18, that claim fails. The ECOA's definition of "credit transaction" does not include "failure to investigate a discrimination complaint." *Love v. Johanns*, 439 F.3d 723, 732 (D.C. Cir. 2006) (cleaned up).

Otherwise, viewing the complaint liberally, Plaintiffs have met the standard identified by the D.C. Circuit. *See infra* Section III.A.5. Thus, the Court will permit Plaintiffs' ECOA disparate impact claim to move forward, reserving for now judgment on its viability given the current uncertainty in the law. *See Garcia*, 444 F.3d at 633; *Pride*, 2024 WL 3924579, at *8.

### 3. Administrative Procedure Act

Plaintiffs fail to state a viable claim under the Administrative Procedure Act (APA). Their allegations are difficult to follow. And, at minimum, do not satisfy Rule 8's requirement that each allegation "be simple, concise, and direct." Fed. R. Civ. P. 8(d)(1); *see generally* Compl. ¶¶ 79–121.

Plaintiffs attempt to clarify their allegations in their opposition brief, stating that USDA violated the APA by "implementing the Inflation Reduction Act (IRA)[3] loan relief provisions" in

---

[3] Congress enacted the IRA as a broad legislative measure to combat inflation. Pub. L. No. 117–169, 136 Stat. 1818 (2022). Among other things, the Act appropriates funding to USDA's loan and conservation programs. *See id.* §§ 21001–23005.

an arbitrary and capricious manner.  Dkt. 28 at 19 (cleaned up).  Their arguments focus on two USDA programs: the Distressed Borrower Program and the Discrimination Financial Assistance Program.  *See* Dkt. 28 at 18–27; Inflation Reduction Act, Pub. L. No. 117–169, §§ 22006–07, 136 Stat. 2021–23 (2022).  In response, USDA argues that Plaintiffs' claims "are based on misunderstandings of how these programs work."  Dkt. 35 at 7.  The Court agrees.

First, as to the Distressed Borrower Program, Plaintiffs allege that USDA provided cash payments to borrowers with guaranteed loans, but for borrowers with direct loans, USDA applied the funds as credits toward their outstanding loan balances.  *See* Dkt. 28 at 19.  In other words, borrowers with direct loans did not receive cash; they received a reduction on their existing debt.  Plaintiffs claim borrowers with guaranteed loans could use the cash deposits "for working capital, equipment, or other farm needs," *id*., and that "USDA has offered . . . no rational justification for treating direct loan borrowers differently from guaranteed loan borrowers," *id.* at 20.  According to Plaintiffs, USDA should have provided similar cash deposits to both types of borrowers because the Distressed Borrower Program was designed to provide "'immediate debt relief' to farmers and ranchers who had suffered from decades of discrimination and financial distress."  *Id.* at 19–20.

This misconstrues the statutory scheme.  The Distressed Borrower Program was designed "to assist people who have had difficulty paying back loans that they owe to" USDA.  Dkt. 25 (June 3 Hr'g Tr.) at 38.  And so it was not designed to "infuse capital into the hands of disadvantaged farmers" for unrestricted use, as Plaintiffs suggest, Dkt. 28 at 20, but to assist "farmers who were delinquent on their loans," Dkt. 35 at 8; *see* § 22006, 136 Stat. at 2021.  Giving cash to direct borrowers would have the opposite of the intended effect.  As USDA

explains, "no borrower would have received a cash payment or direct deposit that he or she could have used for seed, equipment, or any purpose other than debt relief."  Dkt. 35 at 7.

Second, as to the Discrimination Financial Assistance Program, Plaintiffs argue that although "Congress designed [the program] to provide accountability for discrimination" USDA implemented it "in a manner that disclaims discrimination entirely."  Dkt. 28 at 25.  According to Plaintiffs, USDA made no formal findings of discrimination, relied on a "validation" model to score applications, and "offered no transparency into how scores were translated into dollar amounts."  *Id*. (cleaned up).

Again, not so.  The Discrimination Financial Assistance Program was designed "to compensate farmers who have faced discrimination in [USDA's] lending programs" prior to January 1, 2021.  June 3 Hr'g Tr. at 38; § 22007, 136 Stat. at 2022–23.  To award relief to an applicant, USDA must find that the applicant "experienced discrimination by USDA in USDA farm loan programs."[4]  Plaintiffs do not plausibly allege that USDA ignored that requirement. They identify no facts showing that USDA failed to evaluate applicants' experiences with discrimination when it made award decisions.  To the contrary, USDA published the scoring rubric and the methodology it used to calculate award amounts, both of which incorporate whether—and to what extent—an applicant experienced discrimination.  *See* Dkt. 35 at 9.

Accordingly, the Court dismisses Plaintiffs' APA claims.  "In the interest of justice," however, it "will allow Plaintiffs to amend their complaint, if they so choose," to state their claims with greater clarity.  *Jarrell v. Tisch*, 656 F. Supp. 237, 239 (D.D.C. 1987).  Plaintiffs

---

[4] U.S. Dep't of Agric., *DFAP Validation Guide* 63, 184–89 (2024), https://www.usda.gov/sites/default/files/documents/dfap-usda-validation-review-guide-08092024.pdf [https://perma.cc/6XKR-3X5T].  The Court takes judicial notice of USDA's validation guide.  *See Pharm. Rsch. & Mfrs of Am. v. of Health & Hum. Servs.*, 43 F. Supp. 3d 28, 33 (D.D.C. 2014) (collecting cases).

would do well to confer with counsel for USDA to understand the scope of the programs before amending their complaint.

### 4. Due Process

Plaintiffs also allege that USDA violated their due process rights by making "intentional misrepresentations" and denying their loan applications. Compl. ¶¶ 28–33.

As to a due process challenge, the Court must first consider "whether the plaintiff has been deprived of a protected interest in 'property' or 'liberty.'" *Am. Mfrs. Mut. Ins. v. Sullivan*, 526 U.S. 40, 59 (1999) (quoting U.S. Const. amend. XIV). Only after identifying such an interest can it consider whether the government's actions "comport with due process." *Id.*

Plaintiffs' claim fails at the first step. To establish a property interest in a government benefit, a plaintiff must show a "legitimate claim of entitlement" to that benefit. *Bd. of Regents of State Colleges v. Roth*, 408 U.S. 564, 577 (1972). They have not done so. Plaintiffs do not identify the eligibility criteria for the loans they sought, much less allege facts showing that they satisfied those criteria.

Their opposition brief compounds this error by asserting more conclusory allegations. Plaintiffs say they "have property interests in continued eligibility for USDA credit programs" and that "USDA regulations have long guaranteed fair consideration of loan applications, which itself is a property interest." Dkt. 28 at 28. Because bare assertions cannot establish a protected property interest, the Court dismisses Plaintiffs' due process claim. *See Iqbal*, 556 U.S. at 678.

### 5. Equal Protection

The Court now turns to Plaintiffs Equal Protection claim. Because Plaintiffs allege discrimination based on race, *see* Compl. ¶¶ 2, 11–12, the Court construes their claim as a

traditional equal protection claim rather than a "class-of-one" claim, *see Kelley v. D.C.*, 893 F. Supp. 2d 115, 122 (D.D.C. 2012).[5]

Plaintiffs maintain that USDA enforced facially neutral lending rules with discriminatory intent and that those rules disproportionally affect black farmers. *See* Compl. ¶ 2. They point to several eligibility conditions governing access to USDA loans, including a rule barring applicants from receiving certain loans if they have held a direct loan "outstanding for more than a total of 10 years prior to the date the new . . . loan is closed." *Id.* ¶ 3. Plaintiffs also allege that USDA created rules imposing civil and criminal penalties on grant applicants who have outstanding complaints or past-due debts. *Id.* ¶ 24.

Plaintiffs elaborate on these arguments in their opposition brief.[6] They say the eligibility requirements in USDA's handbook systematically disadvantages black farmers. Dkt. 28 at 17. According to Plaintiffs, these requirements result in "substantially higher rates of loan denials, loan withdrawals, and onerous loan conditions" for black farmers than for white farmers. *Id.* Plaintiffs also point to disparities in loan approvals. They state that in 2020, USDA approved approximately 70 percent of direct loan applications submitted by white farmers but only 40 percent of applications submitted by black farmers. *Id.* at 17–18.

Disparate impact alone, however, does not establish an equal protection violation. *Vill. of Arlington Heights v. Metro. Hous. Dev. Corp.,* 429 U.S. 252, 264–65 (1977). Plaintiffs must

---

[5] To the extent Plaintiffs attempt to proceed under a class-of-one theory, that claim must fail. A class-of-one plaintiff must identify a similarly situated comparator who received more favorable treatment. *See e.g.*, *Kingman Park Civic Ass'n v. Gray*, 27 F. Supp. 3d 142, 159 (D.D.C. 2014). Plaintiffs identify none.

[6] "When considering *pro se* complaints, courts may 'consider supplemental material filed by a pro se litigant in order to clarify the precise claims being urged.'" *Wada v. U.S. Secret Serv.*, 525 F. Supp. 2d 1, 9 (D.D.C. 2007) (quoting *Greenhill v. Spellings,* 482 F.3d 569, 572 (D.C. Cir. 2007)).

also plead facts that permit a reasonable inference that USDA acted with "racially discriminatory intent or purpose." *Id.* at 265; *see Washington v. Davis,* 426 U.S. 229, 242 (1976).

"[G]iving Plaintiffs the full benefit of all inferences that can be drawn in their favor, it appears that they have stated a claim on which relief can be granted." *Smith v. Henderson*, 982 F. Supp. 2d 32, 50 (D.D.C. 2013). Plaintiffs point to the historical background behind USDA's lending programs. *See* Compl. at 42; Dkt. 28 at 1–2, 17. They also point to a statistical disparity in the approval rate of loan applications. *See* Dkt. 28 at 17–18. They allege that USDA adopted certain eligibility requirements despite USDA's knowledge that "the eligibility requirements result in worse outcomes for black farmers." *Id.* at 17 (cleaned up).

"A plaintiff may survive a 12(b)(6) motion even if 'recovery is very remote and unlikely.'" *Henderson*, 982 F. Supp. at 50 (quoting *Twombly*, 550 U.S. at 555). Plaintiffs' allegations "may prove to be entirely untrue, but the Federal Rules entitle" them to an opportunity to develop evidence in support of their claims. *Save Our Schs.-Se. & Ne. v. D.C. Bd. of Educ.*, Civ. A. 04-01500, 2006 WL 1827654, at *9 (D.D.C. July 3, 2006). Because the Court finds that Plaintiffs allegations permit a reasonable inference that USDA acted with discriminatory intent, it will allow their Equal Protection claim to move forward.[7]

## B.  Motion to Stay and Remand

Plaintiffs also move to stay this case and remand it to a USDA administrative law judge (ALJ). Dkt. 14. Plaintiffs argue that their case should proceed before an ALJ under "[S]ection 741 of 15 U.S.C. 1961." Dkt. 17 at 1. Section 741, however, does not apply to Plaintiffs

---

[7] Plaintiffs also attempt to state a claim for declaratory judgment. *See* Compl. ¶¶ 37–52; Dkt 28 at 29. But declaratory judgment "is not cognizable as a separate cause of action." *Malek v. Flagstar Bank*, 70 F. Supp. 3d 23, 28 (D.D.C. 2014) (cleaned up); *see C&E Servs., Inc. of Washington v. D.C. Water & Sewer Auth.,* 310 F.3d 197, 201 (D.C.Cir.2002). Therefore, the Court dismisses the claim.

because they did not file "a 'nonemployment related complaint' with the USDA before July 1, 1997 that alleged discrimination occurring between January 1, 1981 and December 31, 1996." *Garcia v. Vilsack*, 563 F.3d 519, 521 (D.C. Cir. 2009).

USDA's ALJs may only hear matters arising under statutes that provide for hearings under the APA. Neither Section 22006 nor Section 22007(e) of the Inflation Reduction Act—the provisions establishing the Distressed Borrower Program and the Discrimination Financial Assistance Program—authorize such hearings. *See* 7 C.F.R. §§ 2.27(a), 15d. Judge Jill Clifton (ALJ) previously determined that "Administrative Law Judges have no authority to grant the relief [Plaintiffs'] request[]." Dkt. 17-1 at 2, 13. This Court agrees and finds that the same reasoning applies here. *See id.* at 8–9. Because remanding the case would be futile, the Court denies Plaintiffs' motion.

## C. Motion for Third-Party Subpoenas

Lastly, Plaintiffs have moved for leave to issue third-party subpoenas. Dkt. 22. USDA does not oppose. Accordingly, the Court grants the motion, with the caveat that the Court sign off on each subpoena before it is issued.

## IV.    CONCLUSION

For the foregoing reasons, the Court:

**GRANTS** Plaintiffs' Motion to Issue Third-Party Subpoenas, Dkt. 22;

**DENIES** Plaintiffs' Motion to Stay and Remand, Dkt. 14; and

**GRANTS IN PART and DENIES IN PART** USDA's Motion to Dismiss, Dkt. 23.

USDA's Motion is **GRANTED** as to Plaintiffs' § 1981, ECOA loan-denial, APA, and Due Process claims. Those claims are dismissed without prejudice. The Motion is **DENIED** as to

Plaintiffs' ECOA loan processing and disparate impact claims, and Plaintiffs' Equal Protection claim. Those claims may move forward.

Within 90 days of this Order, the parties shall meet and confer and file a joint status report updating the Court on the status of the subpoenas and stating whether Plaintiffs intend to file an amended complaint.

**SO ORDERED.**

Date: March 23, 2026

_____
ANA C. REYES
United States District Judge