UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| CHARLES DENNARD, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>BROOKE ROLLINS, Secretary of Agriculture et al.,<br><br>Defendants. | Civil Action No. 25-0879 (ACR) |

**PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF ITS MOTION FOR PRELIMINARY INJUNCTION**

Plaintiffs Charles Dennard, Corey Lea, Corey Lea Inc., and One Georgia Co., by and through undersigned counsel, respectfully move under Federal Rule of Civil Procedure 65 and 5 U.S.C. section 705 for a preliminary injunction preserving available remedial funds, requiring an accounting, preserving records, and prohibiting Defendants from taking actions that would dissipate, reprogram, close out, transfer, or otherwise place beyond effective judicial review funds and records connected to the farm-credit, debt-relief, discrimination-relief, and land-access programs at issue in this case, as against the United States' Department of Agriculture, Defendant.

## INTRODUCTION[1]

The Plaintiffs have filed a Second Amended Complaint ("SAC") [Dkt. 51], in accordance with this Court's March 23, 2026 Order. [Dkt. 38]. This motion is for the claims relating to the Plaintiffs' ECOA loan processing and disparate impact claims, and Plaintiffs' Equal Protection Claim, which this Court has already decided should proceed. For decades, Black farmers have alleged discrimination in USDA and Farm Service Agency lending, servicing, foreclosure, debt collection, civil-rights processing, and access to remedial programs. Congress responded through the American Rescue Plan Act and the Inflation Reduction Act by authorizing relief designed to keep distressed borrowers farming, remove obstacles preventing farmers from returning to farming, improve USDA loan servicing, and provide assistance to farmers who experienced discrimination in USDA farm-lending programs.

USDA's own public statements confirm that Section 22006 relief was intended to do more than issue isolated payments. USDA represented that the program would help keep farmers

[1] Land Access Program Plaintiffs were determined to be likely to succeed on their claim that the grant terminations were contrary to law. This Court has previously recounted that "[t]he Land Access Program originated with section 1006 of the American Rescue Plan Act, entitled 'USDA Assistance and Support for Socially Disadvantaged Farmers, Ranchers, Forest Land Owners and Operators, and Groups,' which appropriated funds for supporting the designated people or groups. The 2022 Inflation Reduction Act amended that section and appropriated additional funds for programs to benefit 'underserved farmers, ranchers, or forest landowners, including veterans, limited resource producers, beginning farmers and ranchers, and farmers, ranchers, and forest landowners living in high poverty areas' and to 'provide financial assistance . . . to farmers, ranchers, or forest landowners determined to have experienced discrimination prior to January 1, 2021, in Department of Agriculture farm lending programs.'" See *Urb. Sustainability I*, 2025 U.S. Dist. LEXIS 157774, 2025 WL 2374528, at *32 (quoting American Rescue Plan Act, Pub. L. No. 117-2, 135 Stat. 4, 13-14; Inflation Reduction Act, sec. 22007, § 1006(b), (e), 136 Stat. at 2022-23). "As a result, the statute 'employs the term 'socially disadvantaged' multiple times and defines this term as meaning people who 'have been subjected to racial or ethnic prejudice because of their identity as members of a group without regard to their individual qualities.''" *Urb. Sustainability Dirs. Network v. United States Dep't of Agric.*, Civil Action No. 25-1775 (BAH), 2026 LX 314555 (D.D.C. June 30, 2026) quoting 7 U.S.C. § 2279(a)(5)-(6).

farming, remove obstacles preventing borrowers from returning to farming, and improve USDA's approach to loan servicing in the long term. USDA further represented that thousands of borrowers whose farms had been foreclosed on and who still had remaining debt would receive relief to stop collections and garnishment so that they could obtain a fresh start.

Plaintiffs allege USDA failed to honor that remedial purpose. Instead, old debt histories, foreclosure histories, loss-claim histories, debt-forgiveness labels, repayment histories, term-limit barriers, tax consequences, and credit-history markers continued to operate as present-day barriers to credit, land restoration, discrimination relief, and re-entry into farming. Plaintiffs further allege that USDA's implementation of Sections 22006 and 22007 produced stark racial disparities, including that 30,514 White Only borrowers received Section 22006 assistance compared with only 263 Black/African American Only borrowers, and that White Only borrowers received 60.46% of assistance by payment compared with 0.72% for Black/African American Only borrowers. See SAC, ¶¶ 33-36.

Plaintiffs do not ask this Court to create a new program. They ask the Court to preserve the status quo, prevent the dissipation of congressionally authorized remedial funds, require an accounting, and protect eligible farmers, heirs, estates, and farmer-owned entities who actually lost land, were denied land-restoration relief, or were excluded from credit and discrimination-relief programs because of USDA/FSA discrimination.

Unless preliminary relief is entered, Plaintiffs and One Georgia members face the permanent loss of a unique remedial opportunity. Once funds are reprogrammed, exhausted, transferred, closed out, or awarded in a manner that excludes eligible farmers and heirs, later relief will be incomplete or impossible. Land is unique. Farming seasons are perishable. Credit

opportunities expire. Family farms and inherited agricultural opportunities cannot be restored by a later accounting alone.

Plaintiffs therefore seek a preliminary injunction requiring USDA to preserve and account for not less than $100 million, or such other amount as USDA's accounting identifies as available, in remaining, unobligated, recaptured, restored, terminated, reallocated, or otherwise available land-access, farm-credit, debt-relief, discrimination-relief, and related remedial funds pending final adjudication of this action.

## BACKGROUND

The USDA identified three vendors to serve the entire country to assist Black farmers through the application process, which are Defendant, The Midtown Group[2], a staffing agency, serving as the national administrator; the Defendant, Windsor Group serving producers in eastern regions of the U.S.; and Analytic Acquisitions a firm based in Silver Spring, Maryland to serve the western side of the country.[3] The USDA used funds from the Inflation Reduction Act to send to those companies, which never made it to the hands of Black farmers who applied, and are still suffering a historic hardship of discrimination. Banks, including the Defendants FirstBank, received funds from the USDA for the relief of Black famers, while the Black farmers still dealt with foreclosures and denial of access to funds. According to Inflation Reduction Act Tracker, run by Columbia Law School the USDA has awarded at least $2.54 billon, potentially leaving about $360 million still available.[4] See also *Butterbee Farm v. United States Department of*

---

[2] See https://www.staffingindustry.com/lists/staffing-100-north-america/2025-staffing-100-north-america/entrants/helen-stefan
[3] See https://www/fsa.usda.gov/news-events/news/08-07-2023/financial-assistance-application-process-opens-usda-farms-loan-borrowers
[4] See https://iratracker.org/programs/ira-22007-usda-assistance-and-support-for-underserved-farmers-ranchers-and-foresters/

*Agriculture*, 1:25-cv-00737, generally. “It is undeniable—and notably uncontested by the parties—that USDA had a dark history of past discrimination against minority famers.” See Order granting Preliminary Injunction in *Wynn v. Vilsack*, 545 F.Supp.3d 1271 (M.D. Fla. 2021).

**A. USDA's acknowledged remedial programs were designed to keep farmers farming and remove barriers to returning to farming.**

USDA provides farm credit to producers who cannot obtain sufficient commercial credit through direct and guaranteed farm loans. Congress later authorized Section 22006 of the Inflation Reduction Act to provide assistance to distressed borrowers whose operations faced financial risk. USDA publicly explained that the purpose of this assistance was to keep farmers farming, remove obstacles preventing borrowers from returning to farming, and improve USDA's approach to borrowing and servicing.

USDA also acknowledged that foreclosed borrowers with remaining debt required particular relief. USDA stated that approximately 2,100 borrowers whose farms had been foreclosed on and who still had remaining debt had that debt resolved to stop debt collections and garnishment, thereby relieving burdens that made a fresh start more difficult.

That public explanation matters. USDA recognized that foreclosure residue, debt collection, and adverse loan histories were not merely past injuries. They were continuing barriers to renewed farming, credit access, and economic restoration.

**B. Plaintiffs allege USDA preserved the same barriers Congress directed it to remove**.[5]

Plaintiffs allege USDA's implementation failed to remove the credit barriers facing Black farmers and similarly situated borrowers. Instead, old debt, loss, foreclosure, delinquency, and

---

[5] See Declarations of Plaintiffs, attached, *generally*.

credit-history records remained available for later use in denying or discouraging new credit. See SAC, ¶¶ 23-40, 84-88.

Plaintiffs also allege USDA and its related administrators denied, limited, failed to determine, or inadequately processed applications by Black and minority farmers, entities, partnerships, estates, heirs, and contingent heirs whose families suffered land loss, credit denial, foreclosure, or other discrimination in USDA farm lending before January 1, 2021. See SAC, ¶¶ 89-107.

The injury is not abstract. Plaintiffs allege that the denial or exclusion of heirs, contingent heirs, and estates compounded generational land loss because farm families lost land, equity, inherited wealth, operating capacity, and credit access that would otherwise have passed to descendants.

**C. USDA's own process contemplated individualized review and remedial flexibility.**

USDA did not represent Section 22006 as a rigid, one-time automated payment exercise. USDA stated that it would administer additional case-by-case processes, including review of complex cases involving bankruptcy or foreclosure and assistance for financially distressed borrowers before they became delinquent.

USDA further stated that its efforts would include adding tools and relaxing unnecessary restrictions through assistance made possible by Congress, with further assistance and changes to be made in subsequent phases.

Those statements support the relief requested here. Plaintiffs seek preservation, accounting, and fair review consistent with USDA's own stated remedial framework.

**D. Farmer advocacy materials confirm that actual farmers sought restoration through debt cancellation, land acquisition, direct assistance, and return of agricultural opportunity.**

Before and after enactment of ARPA, Black farmers and advocates sought relief directed to farmers who had experienced USDA discrimination, including debt cancellation, direct payments, land acquisition, and restoration of the Black agricultural land base.

A January 2022 overview of Black farmers and advocates described Sections 1005 and 1006 as providing debt cancellation and a $1 billion fund for outreach and technical assistance services for farmers of color. It further stated that Section 1006 included a provision to provide direct payments to farmers who experienced USDA discrimination, including farmers who used private bank loans to maintain ownership of multigenerational family farms.

The same materials state that farmers and advocates urged USDA to prioritize restoration through financial compensation, land acquisition, and grantmaking for regenerative food and fiber re-entry and innovation.

Plaintiffs rely on these materials not to ask this Court to legislate a new remedy, but to show notice, reliance, remedial purpose, and the farmer-focused nature of the relief Congress and USDA placed at issue.

**E. One Georgia members and similarly situated farmers continue to report concrete injuries.**

See the Declaration of Corey Lea. Dkt. 57-2. The record also contains examples of farmers alleging continuing discriminatory treatment in USDA debt-relief and loan-servicing decisions. For example, Albert Carpenter Sr. submitted materials alleging retaliation, disparate treatment, and discrimination after USDA allegedly paid off a loan and then added principal back to the loan when USDA was questioned about other loans that had not been paid off.

A final judgment entered after funds are dissipated will not restore lost farming seasons, lost land opportunities, credit access, or the ability to participate meaningfully in remedial

programs, therefore the USDA must be enjoined from dissipating the funds, for not less than $100,000,000.00.

LEGAL STANDARD

A preliminary injunction is an extraordinary remedy.[6] A plaintiff seeking preliminary injunctive relief must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest. *Winter v. Natural Resources Defense Council, Inc*., 555 U.S. 7, 20 (2008). The movant carries the burden of persuasion. *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997).

Where the federal government is the opposing party, the balance-of-equities and public-interest factors merge. *Nken v. Holder*, 556 U.S. 418, 435 (2009); *Pursuing America's Greatness v. FEC*, 831 F.3d 500, 511 (D.C. Cir. 2016). Courts also recognize a substantial public interest in requiring governmental agencies to abide by the federal laws that govern their existence and operation. *See League of Women Voters of the United States v. Newby*, 838 F.3d 1, 12 (D.C. Cir. 2016).

The APA further authorizes a reviewing court to issue all necessary and appropriate process to postpone the effective date of agency action or to preserve status or rights pending conclusion of review proceedings. 5 U.S.C. section 705. That authority is especially important

[6] It is “an extraordinary and drastic remedy” and “should not be granted unless the movant, by a clear showing, carries the burden of persuasion.” *Mazurek v. Armstrong*, 520 U.S. 968, 972, 117 S. Ct. 1865, 138 L. Ed. 2d 162 (1997) (emphasis and internal quotation mark omitted). Plaintiffs seeking a preliminary injunction must establish that (1) they are likely to succeed on the merits of their claims; (2) they are likely to suffer irreparable harm in the absence of preliminary relief; (3) the balance of equities tips in their favor; and (4) an injunction is in the public interest. *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20, 129 S. Ct. 365, 172 L. Ed. 2d 249 (2008); accord Gordon v. Holder, 632 F.3d 722, 724, 394 U.S. App. D.C. 158 (D.C. Cir. 2011).

where an agency's actions threaten to moot judicial review by transferring, exhausting, closing out, or reallocating funds before the court can decide whether the agency acted lawfully.

The final two preliminary injunction factors, balancing the equities and the public interest, generally "merge when the Government is the opposing party." *Nken v. Holder*, 556 U.S. 418, 435, 129 S. Ct. 1749, 173 L. Ed. 2d 550 (2009); see *Pursuing Am.'s Greatness v. FEC*, 831 F.3d 500, 511, 425 U.S. App. D.C. 31 (D.C. Cir. 2016). Here, they also weigh in Plaintiffs' favor. As the D.C. Circuit has explained, "[t]here is generally no public interest in the perpetuation of unlawful agency action." *League of Women Voters*, 838 F.3d at 12. "To the contrary, there is a substantial public interest in having governmental agencies abide by the federal laws that govern their existence and operations." Id. (quotation marks omitted) (quoting *Washington v. Reno*, 35 F.3d 1093, 1103 (6th Cir. 1994)). Additionally, the harms that Plaintiffs and their clients will suffer absent preliminary injunctive relief are severe. *Am. Gateways v. United States DOJ*, Civil Action No. 25-01370 (AHA), 2025 LX 226152, at *37 (D.D.C. July 21, 2025).

## ARGUMENT

### I. PLAINTIFFS ARE LIKELY TO SUCCEED ON THE MERITS

Plaintiffs are likely to succeed because USDA's challenged conduct is arbitrary, capricious, contrary to law, inadequately explained, and inconsistent with the remedial purposes of the statutes Congress enacted. These harms from the forced diversion of resources are similar to those recognized as irreparable harm in other suits. *District of Columbia v. United States Dep't of Agric.*, 444 F. Supp. 3d 1, 42 (D.D.C. 2020)

*A. USDA failed to consider the effect of historical discrimination on present-day credit and land-access barriers.*

An agency acts arbitrarily and capriciously when it fails to consider an important aspect of the problem, offers an explanation contrary to the evidence, or fails to provide a reasoned explanation for its decision. *Motor Vehicle Manufacturers Association of the United States, Inc. v. State Farm Mutual Automobile Insurance Co*., 463 U.S. 29, 43 (1983). Here, Plaintiffs allege USDA knew of its history of discrimination against Black farmers and knew or should have known that debt, loss, foreclosure, delinquency, term-limit, and credit-history rules would disproportionately burden those farmers. Yet USDA continued applying those rules to deny or impair access to credit, debt relief, discrimination relief, land-access relief, and related programs. See SAC, ¶¶ 23-40, 84-88, 168-173.

That is the core defect. USDA could not rationally administer remedial programs designed to remove barriers to farming while continuing to rely on historically tainted barriers without explanation, accounting, individualized review, or fair reprocessing.

USDA's own statements confirm the importance of this issue. USDA announced that Section 22006 relief was intended to keep farmers farming, remove obstacles preventing distressed borrowers from returning to farming, and improve loan servicing. Yet Plaintiffs allege USDA left in place the same obstacles: foreclosure residues, debt histories, loss claims, and impaired credit records.

*B. USDA failed to provide the accounting and process necessary for meaningful review.*

Plaintiffs allege they could not meaningfully contest debt, loss, foreclosure, tax, Section 22006, Section 22007, or credit-eligibility determinations without the relevant records, calculations, accountings, and agency explanations. See SAC ¶¶ 97-107, 165.

That failure is independently unlawful. Where an agency administers statutory benefits, debt relief, loan servicing, credit eligibility, and discrimination-relief determinations, it must

provide enough explanation to allow affected parties and courts to understand what happened, why it happened, and whether the agency acted within lawful bounds.

Plaintiffs seek precisely that interim relief: preservation of funds, preservation of records, accounting of funds and transactions, and reprocessing or reconsideration where USDA relied on tainted debt, loss, foreclosure, delinquency, repayment, term-limit, or credit-history barriers.

*C. USDA's implementation produced stark disparities that support the Plaintiff's ECOA and equal-protection theories.*

Plaintiffs allege that USDA's Section 22006 implementation resulted in extraordinary disparities. As of July 25, 2025, USDA data reflected that 30,514 White Only borrowers received Section 22006 assistance compared with only 263 Black/African American Only borrowers. USDA data further reflected that White Only borrowers received 60.46% of Section 22006 assistance by payment, while Black/African American Only borrowers received 0.72%. See SAC ¶¶ 34-36.

Plaintiffs also allege approximately 15,416 Black farmers were eligible or expected to receive debt relief under ARPA Section 1005, while only 263 Black/African American Only borrowers were reflected in later Section 22006 data.

Those allegations support Plaintiffs' likelihood of success under the Equal Credit Opportunity Act and equal protection. USDA knew the historical context, knew that loan histories and debt markers were shaped by prior discrimination, and nevertheless continued applying those barriers in a manner that allegedly impaired access to credit, debt relief, discrimination relief, and land-access relief.

*D. The requested injunction is consistent with recent relief granted in related USDA land-access litigation*

The relief requested here is consistent with the approach taken in related USDA land-access litigation. In *Urban Sustainability Directors Network v. USDA*, the Court granted preliminary injunctive relief to Land Access Program plaintiffs where USDA terminated grants under a program originating in ARPA Section 1006 and later amended by the Inflation Reduction Act. The Court recognized that the program was designed to benefit underserved farmers, ranchers, and forest landowners and to provide financial assistance to farmers, ranchers, or forest landowners who experienced discrimination in USDA farm-lending programs before January 1, 2021.

Plaintiffs ask the Court to preserve available remedial funds, require an accounting, and prevent USDA from mooting judicial review by dissipating funds before the Court can determine whether USDA's implementation was lawful.

## II. PLAINTIFF'S WILL SUFFER IRREPARABLE HARM ABSENT PRELIMINARY RELIEF

Plaintiffs and Georgia One members face irreparable harm because the injuries at issue cannot be fully remedied after final judgment.

Land is unique. Family farms are unique. Lost planting seasons, lost livestock opportunities, lost credit windows, lost access to land-restoration programs, and lost inherited agricultural opportunities are not fungible injuries. Once USDA transfers, exhausts, closes out, reallocates, or awards remedial funds in a manner that excludes eligible farmers and heirs, the harm becomes practically irreversible.

The same is true of credit access. A farmer denied operating credit, livestock financing, land financing, or debt-clearing relief cannot simply recover the missed season years later. Farming depends on timing, land availability, crop cycles, market access, weather, equipment, financing, and continuity. Delay itself can destroy the opportunity.

USDA recognized this reality when it stated that Section 22006 relief was intended to remove obstacles preventing borrowers from returning to farming and to resolve remaining debt for borrowers whose farms had been foreclosed on so collections and garnishment would cease.

The irreparable harm is especially clear as to heirs, estates, and family members whose claims arise from lost land. Plaintiffs allege that exclusion of heirs, contingent heirs, and estates compounded generational land loss because farm families lost land, equity, inherited wealth, operating capacity, and credit access that would otherwise have passed to descendants. See 57-2 Declaration of Corey Lea.

The declaration submitted with this motion shows concrete, immediate harm. Plaintiff, Corey Lea describes land, credit, debt-relief, entity, and discrimination-relief injuries that continue to affect his ability to farm, replace lost property, obtain credit, and secure meaningful USDA review. One Georgia describes organizational injury, diversion of resources, and member harm. Albert Carpenter Sr. [see Dkt. 57 -1] and additional Georgia One members [see Dkt 57-2] describe continuing injuries arising from alleged USDA debt-relief reversals, loan servicing, foreclosure, denial, lack of meaningful review, and unresolved discrimination complaints.

Without preliminary relief, Plaintiffs will be forced to litigate after the remedial funds and records have already been moved beyond meaningful review. That is the precise circumstance in which preliminary relief is appropriate.

## III. THE BALANCE OF EQUITIES AND PUBLIC INTEREST FAVOR PRELIMINARY RELIEF

The balance of equities favors Plaintiffs. Plaintiffs face loss of land-restoration opportunities, loss of credit access, loss of farming seasons, and loss of meaningful participation in congressionally authorized remedial programs.

USDA, by contrast, faces only a temporary obligation to preserve funds, account for funds, preserve records, and refrain from taking actions that would moot this Court's review. USDA has no legitimate interest in dissipating funds or withholding accounting information if those funds are subject to serious statutory, APA, ECOA, equal-protection, and due-process challenges.

The public interest also favors preliminary relief. Congress authorized remedial programs to address distressed farm borrowers, discrimination in USDA farm lending, land access, and related barriers. The public has a strong interest in ensuring those programs are administered lawfully, transparently, and consistently with their remedial purposes.

The requested injunction would not disrupt lawful agency administration. It would preserve the Court's ability to provide meaningful review.

## IV. THE REQUEST INJUNCION IS NARROW AND PRESERVES THE STATUS QUO

Plaintiffs seek narrow relief. Plaintiffs ask the Court to order USDA to preserve not less than $100 million, or such other amount as USDA's accounting identifies as available, in remaining, unobligated, recaptured, restored, terminated, reallocated, or otherwise available remedial funds connected to land access, discrimination relief, farm-credit relief, debt relief, Section 22006, Section 22007, ARPA Section 1006, ILCMAP, DFAP, or related USDA/FSA remedial programs.

Plaintiffs further ask the Court to prohibit USDA from transferring, exhausting, closing out, reprogramming, dissipating, or awarding those funds in a manner that would moot Plaintiffs' claims or exclude eligible farmers, heirs, estates, and farmer-owned entities who experienced USDA farm-lending discrimination.

Plaintiffs also ask the Court to require USDA to provide an accounting identifying funds appropriated, obligated, unobligated, recaptured, restored, terminated, transferred, awarded, paid, or otherwise available for land-access, discrimination-relief, farm-credit, debt-relief, and related remedial purposes, and to preserve the records necessary to test whether USDA acted lawfully. That relief is tailored to the injury. It preserves the Court's jurisdiction and the practical availability of relief without dictating final program outcomes.

## V. THE COURT SHOULD REQUIRE NO BOND OR A NOMINAL BOND

Federal Rule of Civil Procedure 65(c) gives the Court discretion to determine the appropriate security. Plaintiffs seek preservation and accounting relief against the federal government to prevent dissipation of funds and records necessary for effective judicial review. Requiring a substantial bond would compound the very inequities at issue and impair access to relief for farmers and organizations alleging exclusion from remedial programs. If the Court requires security, Plaintiffs request that it impose only a nominal bond.

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court grant their Motion for Preliminary Injunction and enter an order preserving available remedial funds, requiring an accounting, preserving records, and prohibiting USDA from taking action that would dissipate funds or moot judicial review before this Court can adjudicate Plaintiffs' claims.

Respectfully submitted,

By: *<u>/s/ Ryan L. Jones</u>*

RYAN L. JONES LAW, LLC
Ryan L. Jones [D.C. Bar No. 1015309]
1776 I Street NW, Suite 325

Washington, D.C. 20006
Telephone: (202) 329-8959
Email: ryan@rljoneslaw.com
*Attorney for Plaintiffs*

July 22, 2026