UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| CHARLES DENNARD, et al.,<br><br>Plaintiff,<br><br>v.<br><br>BROOKE ROLLINS, Secretary of Agriculture, et al.,<br><br>Defendants. | Civil Action No. 25-0879 (ACR) |

**USDA DEFENDANTS' REPLY IN FURTHER SUPPORT OF THEIR MOTION TO DISMISS PLAINTIFFS' SECOND AMENDED COMPLAINT**

# TABLE OF CONTENTS


Table of Contents .......... i

Table of Authorities .......... ii

Background .......... 1

Argument .......... 1

I. One Georgia and Corey Lea, Inc. Do Not Have Standing .......... 1

II. Plaintiffs Fail to State a Claim Under the Equal Credit Opportunity Act .......... 2

A. Plaintiffs Fail to State Claims of Disparate Treatment or "Discouragement" Because They Do Not Plausibly Allege Intentional Discrimination .......... 2

B. Vague and Conclusory Allegations of Past Discrimination Do Not State a Disparate Impact Claim Under the ECOA and Plaintiffs Have Not Plausibly Alleged Standing for This Claim Anyhow. .......... 3

III. Plaintiffs Have Unambiguously Failed to State an Equal Protection Claim .......... 5

IV. The Court Should Dismiss Plaintiffs' Remaining Clams. .......... 7

Conclusion .......... 8

# TABLE OF AUTHORITIES

Page(s)

Cases

*Albemarle Paper Co. v. Moody*,
422 U.S. 405 (1975) ........ 4
*Ashcroft v. Iqbal,*
556 U.S. 662 (2009) ........ 4, 6
*Bean v. Perdue*,
No. 17-0140, 2017 WL 4005603 (D.D.C. Sept. 11, 2017) ........ 2
*Bolling v. Sharpe*,
347 U.S. 497 (1954) ........ 6
*City of Cleburne v. Cleburne Living Ctr.*,
473 U.S. 432 (1985) ........ 6
*DaimlerChrysler Corp. v. Cuno*,
547 U.S. 332 (2006) ........ 4
*F.D.A. v. Alliance for Hippocratic Medicine,*
602 U.S. 367 (2024) ........ 1
*Havens Realty Corp. v. Coleman*,
455 U.S. 363 (1982) ........ 1
*Hoskins v. Howard Univ.*,
839 F. Supp. 2d 268 (D.D.C. 2012) ........ 4
*Hunt v. Washington State Apple Advertising Commission,*
432 U.S. 333 (1977) ........ 2
*Illinois v. Ferriero,*
60 F.4th 704 (D.C. Cir. 2023) ........ 5
*Lujan v. Defenders of Wildlife*,
504 U.S. 555 (1992) ........ 1, 4
*Smith v. City of Jackson*,
544 U.S. 228 (2005) ........ 3
*Tex. Dep't of Hous. & Cmty. Affairs v. Inclusive Cmtys. Project, Inc.*,
576 U.S. 519 (2015) ........ 4
*Townsend v. United States*,
282 F. Supp. 3d 118 (D.D.C. 2017) ........ 4
*TransUnion LLC v. Ramirez*,
594 U.S. 413 (2021) ........ 4
*Wards Cove Packing Co. v. Atonio*,
490 U.S. 642 (1989) ........ 3
*Watson v. Fort Worth Bank & Trust*,
487 U.S. 977 (1988) ........ 3
*Wise v. Glickman*,
257 F. Supp. 2d 123 (D.D.C. 2003) ........ 7

Statutes

5 U.S.C. § 704 .......... 7
15 U.S.C. § 1691(a)(1) .......... 2

Regulations

7 C.F.R. Part. 780 .......... 8
7 C.F.R. § 764.101(d) .......... 3
12 C.F.R. § 1002.6(b)(6) .......... 3

Defendant Brooke Rollins, in her official capacity as Secretary of Agriculture, respectfully submits this reply in further support of her motion to dismiss (ECF No. 70) the claims made against the official capacity defendants in the second amended complaint (ECF No. 51).

## BACKGROUND

Plaintiffs' prolix pleadings consist almost entirely of legal conclusions and subjective characterizations of Department of Agriculture ("USDA") actions unsupported by concrete factual allegations. Without support from clear and plausible factual allegations, these conclusions and characterizations have not established the elements of their claims. Thus, the Court should dismiss the claims against the official capacity defendants.

## ARGUMENT

### I. <u>One Georgia and Corey Lea, Inc. Do Not Have Standing</u>

Plaintiffs contend that One Georgia has standing because USDA's challenged practices frustrate its mission and require it to divert resources. *See* Plaintiffs' Opposition (ECF No. 76) ("Pl. Opp'n.") at 11. That contention confuses an organization's alleged advocacy with an injury to its own operations. An organization must satisfy the same Article III requirements as any other plaintiff which means they must plausibly allege a concrete and particularized injury, fairly traceable to the challenged conduct, that the requested relief is likely to redress. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992). In *FDA v. Alliance for Hippocratic Medicine*, the Supreme Court rejected the proposition that an organization can establish standing simply by spending resources in response to government action it opposes. 602 U.S. 367, 394–96 (2024). The Court distinguished such expenditures from the direct interference with organizational services at issue in *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 379 (1982).

One Georgia's allegations, as identified in the opposition, do not establish comparable interference. Plaintiffs identify no particular service that USDA prevented One Georgia from

providing. Instead, Plaintiffs invoke the general concepts of mission frustration and resource diversion, and make a vague allegation of impairment of activities. Pl. Opp'n. at 11. Those allegations do not support organizational standing for One Georgia.

Plaintiffs alternatively invoke associational standing which requires that an organization's members would have standing in the member's own right, that the interests asserted are germane to the organization's purpose, and that neither the claim nor the requested relief requires individual members' participation. *Hunt v. Washington State Apple Advertising Commission,* 432 U.S. 333, 343 (1977). The Second Amended Complaint does not establish the elements of associational standing because it does not describe who are members of One Georgia and how they all have standing to bring claims against USDA. Nor does the Second Amended Complaint explain how the claims One Georgia asserts in this action are germane to the organization's purpose. Therefore, One Georgia Inc lacks standing under this theory. Finally, it is unclear what Corey Lea, Inc. is or how this entity has standing to bring any of its own claims in this case. Therefore, Corey Lea, Inc. should also be dismissed due to lack of standing.

## II. <u>Plaintiffs Fail to State a Claim Under the Equal Credit Opportunity Act</u>

### A. Plaintiffs Fail to State Claims of Disparate Treatment or "Discouragement" Because They Do Not Plausibly Allege Intentional Discrimination.

A disparate-treatment claim under the Equal Credit Opportunity Act ("ECOA") requires facts plausibly showing that the creditor acted "on the basis of" race. 15 U.S.C. § 1691(a)(1). Plaintiffs must show not only that the agency denied a loan, but also that any such denials were made because of the plaintiffs' race. *Bean v. Perdue*, No. 17-0140, 2017 WL 4005603, at *5 (D.D.C. Sept. 11, 2017). USDA argued that the Second Amended Complaint pleads no such facts. *See* USDA Motion to Dismiss, (ECF No. 70) ("USDA Mot.") at 9. The Opposition does not identify any. Plaintiffs also do not defend the Second Amended Complaint's comparator

allegations. Defendant explained that the alleged white comparator is not alleged to have received the same loan that Plaintiffs were denied despite similar qualifications. USDA Mot. at 9. The opposition does not respond. Because the opposition identifies no well-pleaded fact showing that any discrete adverse credit decision issued to Plaintiffs was made because of race, Plaintiffs disparate treatment claim should be dismissed.

**B. Vague and Conclusory Allegations of Past Discrimination Do Not State a Disparate Impact Claim Under the ECOA and Plaintiffs Have Not Plausibly Alleged Standing for This Claim Anyhow.**

If the ECOA permits a disparate impact claim, Plaintiffs' disparate impact case alleges no more than general grievances about alleged past disparities in the Farm Service Agency's loan programs. That does not plausibly allege disparate impact nor Article III standing. In a disparate impact claim the plaintiff must isolate and identify the specific practice responsible for it. *Smith v. City of Jackson*, 544 U.S. 228, 241 (2005) (citing *Wards Cove Packing Co. v. Atonio*, 490 U.S. 642, 656 (1989)); *Watson v. Fort Worth Bank & Trust*, 487 U.S. 977, 994 (1988). Plaintiffs say the Second Amended Complaint now describes the challenged practices "with greater precision." Pl. Oppn' at 8. But Plaintiffs' Opposition cites the same word salad of banking terms that USDA explained in its Motion to Dismiss does not identify a specific policy or practice. *See id.* ("agency loss, debt forgiveness, delinquency, repayment history, foreclosure history, term limits, and credit-history rules"). To the extent these terms have something to do with how the Farm Service Agency considers a loan applicant's credit worthiness in the loan application process, the Agency's regulation requires that review and ECOA Regulation B permits it. *See* 7 C.F.R. § 764.101(d); 12 C.F.R. § 1002.6(b)(6). Plaintiffs identify no particular discretionary method or practice that produces adverse results for black applicants. Nor do Plaintiffs allege that the Agency applies its credit-history requirement differently to black and white applicants.

The Court accepts well-pleaded facts, but "conclusory allegations are not entitled to an assumption of truth, and even those allegations pleaded with factual support need only be accepted insofar as 'they plausibly give rise to an entitlement to relief.'" *Hoskins v. Howard Univ.*, 839 F. Supp. 2d 268, 275 (D.D.C. 2012) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009)). A disparate-impact claim "must fail if the plaintiff cannot point to a defendant's policy or policies causing that disparity." *Tex. Dep't of Hous. & Cmty. Affairs v. Inclusive Cmtys. Project, Inc.*, 576 U.S. 519, 542 (2015). Here, Plaintiffs' characterizations and conclusory statements do not adequately plead a disparate impact claim.

Plaintiffs also have not identified statistical disparities sufficient to state a claim of disparate impact. Plaintiffs allege that 30,514 "White Only" borrowers received Section 22006 assistance, compared with 263 "Black/African American Only" borrowers, and that white borrowers received 60.46 percent of the payments while Black borrowers received 0.72 percent. Pl. Opp'n. 8. First, these figures are raw totals with no denominator. A disparate-impact plaintiff must show that a practice produces outcomes in "a racial pattern significantly different from that of the pool of applicants." *Albemarle Paper Co. v. Mood*y, 422 U.S. 405, 425 (1975). Plaintiffs' own authority says so. Pl. Opp'n. 5 (quoting *Townsend v. United States*, 282 F. Supp. 3d 118, 130 (D.D.C. 2017)). The statistics must show a disparity resulting from a challenged agency policy or practice which, here, Plaintiffs do not identify.

Plaintiffs also fail to plausibly allege standing for their disparate impact claim because they fail to connect any practice to an injury of their own. Plaintiffs must establish standing for each claim and each form of relief, *TransUnion LLC v. Ramirez*, 594 U.S. 413, 431 (2021); *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 352 (2006), and each must allege an injury in fact fairly traceable to the challenged conduct. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61

(1992). To have standing under Article III, Plaintiffs must plausibly allege that the identified practice, rather than some other cause, produced their own injury. The Second Amended Complaint alleges that the 2024 denials rested on Lea's and Dennard's own credit and loan repayment histories. *See* Second Amended Complaint (ECF No. 51) ("SAC") ¶¶ 73–76, 83. It does not allege that a challenged practice, as distinct from those histories, caused the denials, or that black and white applicants with comparable histories were evaluated differently. Plaintiffs' theory about inadequate notice, (SAC ¶¶ 146–147), is not tied to any adverse credit event, because Plaintiffs do not say what information was withheld or how its absence affected a loan decision. Plaintiffs call these points "merits arguments." Pl. Opp'n. 8. They are not. Identifying a specific practice is an element of a disparate impact claim that Plaintiffs must satisfy and traceability is a threshold jurisdictional requirement.

The Court's earlier ruling on USDA's motion to dismiss Plaintiffs' disparate impact claim in their first complaint does not foreclose consideration of USDA's arguments here. The Court has an independent obligation to confirm its jurisdiction at every stage, and that includes standing. *See Illinois v. Ferriero,* 60 F.4th 704, 714 (D.C. Cir. 2023). Plaintiffs do not claim that their disparate impact claim in the Second Amended Complaint is the same as the one in the first complaint and so the law of the case doctrine does not apply. But even if it did, Plaintiffs have not plausibly identified both a challenged agency practice associated with a statistical racial disparity and so the Court is not bound by a prior decision denying USDA's motion to dismiss Plaintiffs' disparate impact claim under the ECOA.

## III. Plaintiffs Have Unambiguously Failed to State an Equal Protection Claim

USDA's Motion's argued that Plaintiffs cannot state a claim under the Equal Protection Clause by alleging that USDA adopted race-neutral criteria despite knowing the criteria would disproportionately burden black farmers. USDA Mot. at 16–17. Plaintiffs' Oppositon does not

respond to that. Instead, Plaintiffs cite the ECOA's text and three decisions holding that the Farm Service Agency is an ECOA "creditor." Pl. Opp'n. at 9. While that observation may be correct, it says nothing about whether Plaintiffs have pleaded purposeful discrimination under the Fifth Amendment.

The Equal Protection Clause applies to the federal government through the Fifth Amendment, *Bolling v. Sharpe*, 347 U.S. 497, 500 (1954), and requires that similarly situated persons be treated alike. *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985). A plaintiff alleging intentional discrimination "must plead and prove that the defendant acted with discriminatory purpose." *Iqbal*, 556 U.S. at 676. Purposeful discrimination "requires more than intent as volition or intent as awareness of consequences." *Id.* at 676–77. It "involves a decisionmaker's undertaking a course of action because of, not merely 'in spite of,' [the action's] adverse effects upon an identifiable group." *Id.*

Plaintiffs' own description of their Equal Protection Claim in their Second Amended Complaint confirms that this claim should be dismissed. Their central allegation is that USDA "knew" that its debt, loss, foreclosure, delinquency, and credit-history rules "would disproportionately burden" black farmers and "nevertheless continued" to apply them. SAC ¶ 170. That is awareness of consequences. It is exactly what *Iqbal* holds is insufficient. The opposition identifies no plausible factual allegation in the Second Amended Complaint that any USDA official adopted or applied the credit-history criteria in order to disadvantage Black applicants.

Plaintiffs also cannot invoke the Court's prior ruling as a shield when they chose to replead the claim. The Second Amended Complaint is the only pleading before the Court, and USDA is entitled to test it under Rule 12(b)(6). In any case, Plaintiffs' Opposition confirms that their stated basis for their Equal Protection Claim conflicts with Supreme Court precedent establishing the

scope of an Equal Protection Claim. Accordingly, Plaintiffs Equal Protection Claim must now be dismissed.

**IV. <u>The Court Should Dismiss Plaintiffs' Remaining Clams.</u>**

*Administrative Procedure Act:* USDA's Motion explained that Plaintffs' APA claim, as it challenges the 2024 loan denials, is a credit discrimination claim for which ECOA supplies an adequate remedy, so APA review is unavailable. USDA Mot. at 17; 5 U.S.C. § 704; W*ise v. Glickman*, 257 F. Supp. 2d 123, 127 (D.D.C. 2003). Plaintiffs do not dispute that ECOA covers those denials. They respond that the APA claim also reaches Section 22006 and 22007 "accounting," "scoring," and "review" decisions and seek vacatur, remand, and reprocessing rather than "ECOA damages." Pl. Opp'n. at 11–12. That response fails because it identifies no final agency action beyond the two loan denials or any reasons that any such additional final agency actions were arbitrary and capricious.

*Retaliation Under the ECOA:* Plaintiff Lea does not state a claim of retaliation under the ECOA. Plaintiffs' Opposition does not bridge the nearly fifteen years between his 2008 discrimination complaint and the 2024 loan denials. Instead, it points to "an intervening and continuing course of servicing, foreclosure, debt-relief, accounting, complaint-processing, and credit-related conduct." Pl. Opp'n at 10. But that identifies no adverse credit event in that period that could suggest a pattern of reprisal. The opposition also does not allege that anyone at USDA involved in the 2024 loan decisions knew of Lea's 2008 discrimination complaint. Without such knowledge, the 2008 complaint cannot have caused those decisions.

*Procedural Due Process:* Plaintiffs' Due Process claim still fails because the Opposition identifies no source of law creating a protected property interest and no process Plaintiffs were due but denied. A property interest requires a legitimate claim of entitlement grounded in an independent source of law yet Plaintiffs cited no authority entitling them to Farm Service Agency

loans. *See* USDA Mot. at 13-14. The opposition again cites none. It asserts only that the Second Amended Complaint alleges "legitimate claims of entitlement, where eligibility requirements were met, to credit, debt relief, discrimination relief, notice, accounting, review, payment, or reprocessing." Pl. Opp'n. at 12. Those allegations do not establish a property interest. Nor does the Opposition identify what process was missing. It refers generally to "inaccessible records, inadequate explanations, Section 22006 accountings, and Section 22007 review." Pl. Opp'n at 13. But Plaintiffs still do not say what record or calculation they lacked, or if they invoked the administrative appeal available for denied direct loans. *See* 7 C.F.R. Part 780. Moreover, Plaintiffs acknowledge that USDA gave them written reasons for the denials. SAC ¶¶ 73-76, 83. In sum, Plaintiffs are long way from pleading a Due Process Claim and that claim should be dismissed.

## CONCLUSION

For these reasons the Court should grant USDA Defendant's motion to dismiss Plaintiffs Second Amended Complaint.

Dated: November 12, 2026

Respectfully submitted,

JEANINE FERRIS PIRRO
United States Attorney

By *_/s/ Michael E. Yohannan_*

MICHAEL E. YOHANNAN,
PA Bar # 307575
Assistant United States Attorney
601 D Street, NW
Washington, DC 20530
(202) 809-2054
Michael.Yohannan@usdoj.gov

*Attorneys for the United States of America*